UNITED STATES *v.* MAURICE LOBSITZ (No. 4570)[1]

United States Court of Customs and Patent Appeals, January 27, 1948

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F Donohue*, special attorneys, of counsel), for the United States.

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellee.

[1] C. A. D. 386.

[Oral argument December 3, 1947, by Mr. Donohue and Mr. J. L. Klingaman]

Before GARRETT, Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, rendered in conformity with its decision (Abstract 51341) 17 C. D. 191, sustaining two protests (the cases being consolidated for trial) of the importer against the collector's classification of certain merchandise, hereinafter more particularly described, as wool rags, duty being assessed at 9 cents per pound under paragraph 1105 (a) of the Tariff Act of 1930 as modified by the reciprocal trade agreement with the United Kingdom, T. D. 49753, 74 Treas. Dec. 253, proclaimed by the President of the United States November 25, 1938.

We reproduce the text of paragraph 1105 (a), as originally enacted, in full. (Some of the rates of duty have been altered by the trade agreement noted).

PAR. 1105. (a) Top waste, slubbing waste, roving waste, and ring waste, 37 cents per pound; garnetted waste, 26 cents per pound; noils, carbonized, 30 cents per pound; noils, not carbonized, 23 cents per pound; thread or yarn waste, 25 cents per pound; card or burr waste, carbonized, 23 cents per pound; not carbonized, 16 cents per pound; all other wool wastes not specially provided for, 24 cents per pound; shoddy, and wool extract, 24 cents per pound; mungo, 10 cents per pound; wool rags, 18 cents per pound; flocks, 8 cents per pound.

In its protests appellant made alternative claims, the one relied upon before the trial court and by it sustained being that the merchandise is properly classifiable as "Waste, not specially provided for," with duty assessment at 7½ per centum ad valorem under paragraph 1555 of the 1930 act, as modified by the trade agreement, T. D. 49753, *supra*.

In its decision the trial court cited the case of *P. Silverman & Son* v. *United States*, 27 C. C. P. A. (Customs) 324, C. A. D. 107, and that of *P. Silverman & Son* v. *United States*, 32 C. C. P. A. (Customs) 99, C. A. D. 292, it being the trial court's view that the legal principle which is applicable in the instant case was announced in our decisions in those cases, and that the only question to be determined here is one of fact; that is "whether or not the instant merchandise comes in competition with wool."

In both of the cases so cited numerous decisions were reviewed, and the legislative history of paragraph 1105, *supra*, received careful study and was of great potency in construing paragraph 1105, *supra*.

In the first of the two *Silverman* cases, *supra*, the merchandise involved was described as follows:

The merchandise consists of so-called Palmer or sanforizing blankets which are in a worn-out condition and no longer serviceable for their original purpose.

When new, they are chiefly used in textile finishing operations, and "discarded when they have become so worn and burnt by heat and friction as to render them unsuitable for their original purpose." They are then sold for waste for whatever they will bring. When so dealt in, they are commonly known as dryer felts. They are imported in sizes varying from 3 feet to 40 feet in width and from 5 feet to 50 feet in length. Some of the merchandise is imported in rolls which have to be unrolled and cut into pieces.

The collector classified the merchandise as woolen rags under paragraph 1105, *supra*, and it was claimed by the importer to be properly classifiable under paragraph 1555, *supra*, as "Waste, not specially provided for." The Customs Court held that the collector's classification was erroneous and also that the claim of the importer under paragraph 1555 was erroneous. Its holding as to classification was that it fell within the provision for "all other wool wastes not specially provided for" in paragraph 1105, *supra*. It was conceded before us that the collector's classification was erroneous and we gave no consideration "to the woolen rag question," but as between "wool wastes," n. s. p. f. in paragraph 1105, *supra*, and "Waste," n. s. p. f. in paragraph 1555, *supra*, we held the latter paragraph applicable.

In so holding we stated, after having reviewed the legislative history at length:

From the foregoing it seems reasonable to conclude that Congress, in preparing the wool waste provision, was only concerned about wastes of wool which would influence and affect the sale and use of wool, and we think that a waste which happens to be composed of wool but which cannot, under any circumstances, replace or be competitive with wool, was not intended to be subjected to the high rate of duty of 24 cents per pound.

In the second of the *Silverman* cases, *supra*, the merchandise consisted of discarded paper-mill felts ranging from 15 to 18 feet in width and 50 to 75 feet in length. We quoted the following from the decision of the Customs Court:

Old paper-mill felts are a discarded article of the paper-making industry. They represent felts which have outlived their usefulness in the manufacture of paper, and *have no further commercial value except for the recovery of their component wool fibers by being processed to a fibrous condition known as wool shoddy. Their chief use, after being discarded by paper mills, is in the manufacture of wool shoddy.* These felts are shredded to reduce them to fiber form and then carded or garnetted so as to produce a mass of wool fibers suitable for use in the spinning of yarn to be made into cloth. [Italics quoted.]

The collector, following "a directive of the Commissioner of Customs" (supposed to have been prompted by our decision in the first *Silverman* case, *supra*), classified the merchandise as "wool wastes not specially provided for" under paragraph 1105, *supra*. Alternative claims were made in the protest of the importer, one being for classification as "Waste," n. s. p. f. under paragraph 1555, *supra*. Our

decision discloses that that claim "was expressly waived in this court, and appellant made no assignment of error against the trial court's action in failing to hold the instant merchandise to be dutiable under that provision."

The claim of the protest actually relied upon before us was that the merchandise was classifiable as "wool rags," either directly or by similitude, and dutiable at 9 cents per pound, under paragraph 1105, *supra*. This claim had been overruled by the Customs Court notwithstanding the testimony of a number of witnesses whose evidence we found had been fully analyzed and weighed by that court and we affirmed the court's holding in that regard.

We did this, however, without approving the collector's classification. We in fact expressly disapproved his classification, but there was no formal reversal of the judgment appealed from nor any remand of the case because the importer had failed to present any claim which could be sustained.

In the decision of the second *Silverman* case, *supra*, we held that the decision in the first case was not necessarily controlling of the second because of the difference in the goods involved in the respective cases, but we adhered to the principle announced in the first case and applied it in the second.

In the first case the merchandise consisted of woolen dryer felts not suitable for any textile remanufacture, its use being for wiping and abrasive purposes in the steel industry. It did not replace nor enter into competition with wool.

In the second case the old woolen paper-mill felts seem to have been found capable of being processed into shoddy which sometimes does replace or compete with wool, but by reason of the legislative history of paragraph 1105, *supra*, which we reviewed at length in both the *Silverman* cases, *supra*, it was our conclusion that it was not within the legislative intent that merchandise of the kind there involved should be classified under that paragraph as wool wastes, n. s. p. f.

It may be said that our decision in the first *Silverman* case, *supra*, was rendered March 4, 1940, and that in the second case December 11, 1944. The first entry involved here appears to have been liquidated April 20, 1944, and the second September 18, 1944. So our decision in the second case was not before the customs administrative officials at the times of entry and liquidation of the involved importations.

We adhere to the principle of law stated in our decision in the *Silverman* cases, *supra*.

Already we have stated that the trial court held that (paragraph 1105, *supra*, having been construed in those cases) the only question to be determined here is one of fact; that is, whether or not the instant merchandise comes in competition with wool.

The brief for the Government states that two questions are to be determined, viz.:

1. Whether the finding of the lower court that the imported merchandise is not wool rags is contrary to the weight of evidence.

2. Whether the lower court erred in finding that the imported merchandise does not replace or compete with wool.

To a certain extent the two questions seem to overlap, but the Government's form of statement serves to make clear just what the issue is, and for that reason is quite appropriate.

We note that in the brief on behalf of appellee it is argued that even if the merchandise is in fact rags it would still be classifiable under paragraph 1555, *supra*, as "Waste, not specially provided for" because of the legislative history of paragraph 1105 as recited in the *Silverman* cases, *supra*. The argument is plausible, in view of what we regard as the analogy between this case and the second *Silverman* case, but it is a contention, which, if made before it, the trial court did not pass upon, and, in view of our conclusion with respect to the facts which that court found, we refrain from any definite ruling concerning it.

We have given consideration to the factual issue having in mind the long established rule of practice in the jurisprudence of the States and the United States that an appellate court will not reverse the findings of a trial court unless such findings be clearly against the weight of the evidence. No citation of authority is necessary in support of this age-old principle.

In the instant case the trial court found the facts to be as follows:

The record herein consists of oral testimony of four witnesses—each side introduced two—and samples, including two of the instant merchandise (exhibits 1 and 2).

An examination of the samples discloses that they are pieces or strips of white wool felt, bearing definite indication that they are cuttings from a bolt or large sheet of material. Their appearance more accurately responds to the definition of a "remnant"—"the piece left after the last cutting, as of cloth"—[Funk & Wagnalls New Standard Dictionary] rather than a "rag," defined in the same lexicographic authority as "A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as linen *rags*."

A member of the plaintiff partnership, dealers in all kinds of waste materials, converting and reclaiming them into fibers, testified that he purchased the material in question as "felt scrap," and identified exhibit 1 as "both woven and felted" and exhibit 2 "just felted and pressed." Plaintiff's other witness, also a dealer in waste materials including merchandise like that under consideration, described the goods in question as wool felt remaining from large sheets or rolls used in the manufacture of "gaskets, washers, and other types of utensils of felt." Defendant's witness, engaged in the rag business for 43 years, testifying from an inspection of the samples, stated that they "could be termed under the term 'rags'," but "they are really a felt clipping or felt cutting, or felt scrap."

From the oral testimony, coupled with our consideration of the samples, we find that the present merchandise is, in fact, wool waste and not wool rags, as classified by the collector. Thus, the issue before us is decided by the *Silverman* cases, *supra*.

The preponderance in weight of the evidence shows that the imported wool felt scrap is subjected to a chemical treatment and washing process, removing all adhesives and other undesirable substances, and softening the material prior to being processed through a shredder to make it available for its ultimate chief use as stuffing and batting material. It also has some use as roofing paper. The extremely short length of the fibers makes the material wholly unsuitable for spinning purposes and consequently does not compete with the woolen industry. These findings are not disturbed by defendant's statement to the effect that a percentage of the imported material might be used as a blend, for cheapening shoddy, where the fiber stock is not too short.

We think there is substantial evidence to support each finding of fact so made and that each finding is in conformity with the weight of the evidence—not against it.

The samples of the merchandise in its imported condition consists of what properly may be called "fragments" of woolen material left after pieces, seemingly circular in shape, had been stamped, punched or cut from bolts of felted cloth for use as gaskets, washers and the like.

The evidence establishes that the fragments came from two classes of felted cloth, one of which was cloth that was both woven and felted; that is to say, the raw material was spun into yarns which were woven and the woven parts were then pressed together or felted. There seem to have been 12 bales of the imported fragments which came from that character of cloth. Those fragments are represented by importer's Exhibit 1. The other class of cloth consisted of material which was merely felted, no weaving operation having been performed in connection with it. There seem to have been 8 bales of the imported fragments which came from that character of cloth. Those are represented by Exhibit 2.

We do not find where any witness for either the importer or the Government seemed willing to state that Exhibit 2 was known as a rag or that the merchandise represented by it had any of the characteristics of a rag except in the broad sense that any piece or fragment of cloth might be called a rag. Disregarding the testimony of the importer himself and that of the other witness called by him and looking solely to that of the two witnesses called by the Government, we find that the latter's witness Kaplan while stating with respect to both Exhibits 1 and 2 that "they could be termed under the term 'rags'," in answer to Government counsel's question "Well, what are they termed under?" answered, "They are really a felt clipping or a felt cutting, or felt scrap." When asked "Are felt clippings rags?" the witness responded, "I think you would say they were under the head of rags generally speaking."

The Government's witness Thomas while expressing the opinion that the fragments representing Exhibit No. 1, were rags, said with reference to Exhibit No. 2 "This is a full, a pressed thing. That, I would call a clip—and whether I would call that a rag or not, there would be a doubt in my mind."

Certainly the record contains nothing which would justify holding that the weight of the evidence is adverse to the finding that Exhibit 2 is not a rag.

We think the same thing is true with respect to Exhibit 1. All that the witness Kaplan said of Exhibit 1 has been hereinbefore quoted. So far as the rag question was concerned (and incidentally that is all he was questioned about) he treated Exhibits 1 and 2 as being in the same category. The witness Thomas did give it as his opinion that Exhibit 1 is a rag. One reason which he gave was that the "O. P. A. book" so classified it, but he indicated that it was or would have been so classified by himself before the "O. P. A. book" was published because it "is woven and anything that is woven is a cloth or a rag."

However truthful the witness may be and certainly we have no intention of reflecting upon his truthfulness, we could not justify ourselves in overruling the finding of the trial court upon such meagre testimony.

We deem it unnecessary to review in detail the evidence respecting the replacement of, or competition with, wool by the imported merchandise. Practically all the testimony in the case, including that of the Government's witness Thomas (Kaplan did not testify about this at all) indicates that the fibers which can be derived from the materials represented by the respective Exhibits 1 and 2 are so short that it would be wholly impracticable if not impossible to spin them into yarn which could be woven into cloth. The most that can be claimed to be shown by the testimony of Thomas on this point is that the short fibres could be placed with longer fibres which are spinnable, derived from other materials, and thus enter into the composition of shoddy, which he agreed is "really a form of cheapening shoddy."

The Government notwithstanding the testimony of the importer and his witness Stone to the effect that there is no spinning of the short fibres, insists that the testimony of Thomas indicates that it is possible to use them in the manner described and that since they enter into the composition of shoddy they may not properly be held not to replace wool or compete with it. Our decision in the second *Silverman* case, *supra*, seems to be a complete answer to that contention.

We find no error in the decision of the trial court and the judgment appealed from is *affirmed*.